STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 1454

BANK OF ZACHARY

VERSUS

TRAVIS W. BOND

Judgment Rendered: JUL 0 8 2020

* * * * * *

On appeal from the
Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket Number 156,893

Honorable Charlotte H. Foster, Judge Presiding

* * * * * *

David S. Rubin
Baton Rouge, LA

Counsel for Appellee
Bank of Zachary

Travis W. Bond
Walker, LA
Michael C. Hendry
Port Allen, LA

In proper person

Counsel for Appellant
Travis W. Bond

* * * * * *

BEFORE: WHIPPLE, C.J., GUIDRY AND BURRIS,[1] JJ.

---

[1] Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**GUIDRY, J.**

This is an appeal by Travis W. Bond, who seeks to vacate the deficiency judgment rendered against him on the basis that the Bank of Zachary failed to comply with the notice requirements for executory proceedings. For the following reasons, we dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

On September 20, 2017, the Bank of Zachary (the "Bank") instituted a foreclosure action against Travis W. Bond. The Bank was the holder and owner of a promissory note ("Note") made by Mr. Bond on June 29, 2015 in the original principal amount of $435,151.33, which was payable to the Bank beginning on July 29, 2015 in fifty-nine regular installments of $2,337.07 with the last installment being irregular. In connection with the Note, the Bank held two collateral mortgage notes. The first collateral mortgage note ("CMN-1") was made by Mr. Bond in the principal amount of $375,000.00, and was paraphed "ne varietur" by a notary, evidencing the related Act of Collateral Mortgage ("Mortgage-1"). The second collateral mortgage note ("CMN-2") was made by Mr. Bond in the principal amount of $100,000.00 and was also paraphed "ne varietur" by a notary, which evidenced the related Act of Collateral Mortgage ("Mortgage-2"). In both Mortgage-1 and Mortgage-2, Mr. Bond mortgaged, affected, and hypothecated in favor of the Bank, and any other holder of the notes, the real property (the "Property") described as follows:

> ONE (1) CERTAIN LOT OR PARCEL OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Livingston, Louisiana, in that subdivision thereof known as LOUISIANA PURCHASEEQUESTRIAN ESTATES, and being designated on the official plat thereof on file and of record in the office of the Clerk and Recorder for Livingston Parish, Louisiana, as LOT NUMBER THIRTY-SIX (36), said subdivision; said lot having such bearings and dimensions and being subject to such servitudes

2

and building line restrictions of record and as shown on the official subdivision plat.

Mr. Bond also executed two separate Acknowledgments of Security Interest in Collateral Mortgage Note. In both Acknowledgements, Mr. Bond acknowledged that he previously granted a security interest in CMN-1 to secure payment of any and all indebtedness in the present or in the future to the Bank and reaffirmed the security interest. Mr. Bond then executed a Security Agreement in which the Bank was granted a security interest in CMN-2 to secure the payment of present and future indebtedness of Mr. Bond to the Bank.

Ultimately, Mr. Bond defaulted on the Note, and the Bank sought to enforce its rights and remedies in the instant foreclosure action against Mr. Bond and further sought to enforce its mortgage and/or privilege and other security interests on the Property through executory process. The Bank requested that Mr. Bond be served with the Petition for Foreclosure by Executory Process (with Appraisal) (the "Petition") at the physical address of the Property. Pursuant to the sheriff's return, the sheriff was unable to serve Mr. Bond after due and diligent attempts were made. Thereafter, the Bank filed a Motion and Order for Appointment of Curator and Directing Service on Curator, and the trial court signed the Order on October 26, 2017.[2] The curator appeared in the suit, answering the Petition with general denials, but was never able to locate Mr. Bond.

On December 6, 2017, the Bank obtained an Order issuing a writ of seizure and sale in the principal amount of $449,442.88, plus interest and legal fees not to exceed 25% of the principal amount due, and commanding the sheriff to seize and sell the Property in accordance with the law, with appraisal. The Property was subsequently sold on June 6, 2018; however, the principal amount due by Mr.

---

[2] The order appointing a curator for Mr. Bond stated that the sheriff shall serve the notice of seizure (as required by La. C.C.P. art. 2721) and any other documents required to be served in the proceedings on the appointed curator.

3

Bond exceeded the net proceeds realized by the Bank from the judicial sale. Accordingly, the Bank amended the Petition ("Amended Petition") and converted the suit to an ordinary proceeding to obtain a deficiency judgment against Mr. Bond. Mr. Bond was served with the Amended Petition, but he failed to timely file responsive pleadings. The Bank obtained a Preliminary Default Judgment on March 27, 2019, and, then, Mr. Bond, appearing *pro se*, filed an Answer to the Amended Petition on April 15, 2019. Unaware of the answer filed by Mr. Bond, the Bank filed its Motion for Confirmation of Default Judgment on April 25, 2019. The Bank filed a Motion to Strike Answer and for Hearing on Confirmation of Default Judgment, or Alternatively Motion for Summary Judgment on May 1, 2019, admitting that the Motion for Confirmation of Default Judgment could not be granted as requested in light of Mr. Bond's answer. However, on the same date this motion was filed, the trial court signed the Judgment by Default against Mr. Bond.

Thereafter, a hearing on the Motion to Strike Answer and for Hearing on Confirmation of Default Judgment, or Alternatively Motion for Summary Judgment was held on June 3, 2019 with the attorney for the Bank and Mr. Bond present. At the hearing, the Bank orally moved to vacate the Judgment by Default signed by the trial court on May 1, 2019 and moved to withdraw its motion to strike Mr. Bond's answer, both of which the trial court granted. The hearing proceeded on the Bank's motion for summary judgment, during which time the Bank offered the entire record as evidence in support. Mr. Bond did not oppose the Bank's motions and did not offer any evidence at the hearing. The trial court ultimately granted the Bank's motion for summary judgment. A final judgment was signed on June 12, 2019, rendering judgment in favor of the Bank and against

Mr. Bond in the amount of $359,274.85, plus legal interest from May 1, 2019 until paid at the default rate of $173.85 per day, and all costs of the matter.

Mr. Bond appeals the June 12, 2019 judgment and assigns as error the trial court's entry of a deficiency judgment in favor of the Bank in light of the Bank's failure to comply with the requirements for executory proceedings. Mr. Bond contends that the Bank had a curator appointed to represent Mr. Bond without first making diligent efforts to ascertain his whereabouts so as to properly serve Mr. Bond, when he was not an absentee and his whereabouts were easily ascertainable.

## LAW AND DISCUSSION

Executory proceedings are those used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment. La. C.C.P. art. 2631. In order to enforce a mortgage in an executory proceeding, a plaintiff must file a petition praying for the seizure and sale of the property affected by the mortgage and must submit with the petition authentic evidence of the note, bond, or other instrument evidencing the obligation secured by the mortgage as well as the authentic act of mortgage importing a confession of judgment. La. C.C.P. arts. 2634 and 2635(A). Wells Fargo Bank, N.A. v. Settoon, 12-1980, p. 3 (La. App. 1st Cir. 6/7/13), 120 So. 3d 757, 759. If plaintiff is so entitled, the court shall order the issuance of a writ of seizure and sale commanding the sheriff to seize and sell the property affected by the mortgage or privilege, as prayed for and according to law. La. C.C.P. art. 2638.

Citation is not necessary in an executory proceedings. La. C.C.P. art. 2640. However, the sheriff is required to serve the defendant with written notice of the seizure of the subject property after the order has been signed, which notice must be accomplished by personal or domiciliary service. La. C.C.P. art. 2721(B).

5

Prior to the sale, the seized property must be appraised in accordance with the law, which includes notice to the debtor within a prescribed time and in a certain manner directing him to name an appraiser to value the property. La. C.C.P. art. 2723; La. R.S. 13:4363. Also see Citizens Sav. & Loan Ass'n v. Kinchen, 622 So. 2d 662, 664 (La. 1993). In cases where the court must appoint an attorney to represent an unrepresented defendant, the notice of seizure required in La. C.C.P. art. 2721(B) as well as other documents required to be served may be served upon the appointed attorney. La. C.C.P. arts. 2641 and 2674.

The creditor may obtain a personal judgment against the debtor for any deficiency remaining on the secured debt after the application of the net proceeds of sale thereto, provided that the property has been sold under the executory proceedings after appraisal in accordance with La. C.C.P. art. 2723. La. C.C.P. art. 2771. To obtain the deficiency judgment, however, the creditor must either convert the executory proceeding into an ordinary proceeding or institute a separate suit; in both cases the defendant must be cited and all delays and formalities required in ordinary proceedings must be followed. La. C.C.P. art. 2772.

In this matter, the Bank requested that the Petition be served on Mr. Bond at the address of the Property. According to the sheriff's return, multiple attempts to serve Mr. Bond were made at the address of the Property (on September 27, 2017, September 28, 2017, and October 2, 2017), but no contact was ever made. The sheriff's return indicated that the "house allegedly ran-sacked by wife, upon investigation LPSO obtained search warrant – seized narcotics [–] warrant out for arrest of Travis Bond." Using the information provided in the sheriff's return, the Bank sought the appointment of a curator, noting that Mr. Bond had absented himself from Livingston Parish and could not be served. A curator was appointed

6

on October 26, 2017, so that the notice of seizure and other documents could be served on the curator for Mr. Bond pursuant to La. C.C.P. art. 2641. According to the documents filed by the curator on December 6, 2017, Mr. Bond could not be located at that time.

Raising the issue for the first time on appeal, Mr. Bond complains that he was not an absentee and that his whereabouts were easily ascertainable. Mr. Bond avers that the entry of the deficiency judgment against him was improper due to the improper appointment of a curator, such that Mr. Bond never received actual or constructive notice of the right to appoint an appraiser. La. C.C.P. arts. 2674, 2723, 2771, 5251(1). Kinchen, 622 So. 2d at 664 ("[S]ervice of written notice to appoint appraisers upon the debtor is an essential element of an appraisement in accordance with law, and the creditor may not obtain a judgment against the debtor for any deficiency due unless he proves that this legal prerequisite has been complied with.")

However, Mr. Bond never raised this issue in the trial court, despite having the opportunity to do so. When the Bank converted the executory proceedings to ordinary proceedings to obtain a deficiency judgment, service was requested on Mr. Bond. Service of the Amended Petition was made via domiciliary service on Mr. Bond on March 4, 2019, and Mr. Bond filed an answer to the Amended Petition on April 15, 2019. Mr. Bond received notice of the hearing held on June 3, 2019 and was present at the hearing. Notwithstanding, Mr. Bond did not raise the issue of the improper appointment of a curator with the trial court in order to prevent the entry of the deficiency judgment, and this issue will not be considered now on appeal. ASP Enterprises, Inc. v. Guillory, 08-2235, p. 9 (La. App. 1st Cir. 9/11/09), 22 So. 3d 964, 971, writ denied, 09-2464 (La. 1/29/10), 25 So. 3d 834 ("Our jurisprudence has a longstanding general rule that issues not submitted to the

7

trial court for decision will not be considered for the first time on appeal."); Rule 1-3, Uniform Rules of Louisiana Courts of Appeal. Because Mr. Bond has failed to adequately preserve this issue, we find that Mr. Bond has abandoned his argument that the entry of a deficiency judgment against him was improper due to the appointment of a curator. See Johnson v. State, 02-2382, p. 4 (La. 5/20/03), 851 So. 2d 918, 921, and McLane Southern, Inc. v. Bridges, 13-1819, p. 5 (La. App. 1st Cir. 11/3/14) (unpublished). Accordingly, we decline to consider the sole issue raised by Mr. Bond in the appeal, and dismiss the appeal.

## CONCLUSION

Based on the foregoing discussion, we dismiss the appeal of Travis W. Bond raising for the first time on appeal the issue of whether the appointment of a curator was proper, thereby precluding the entry of the deficiency judgment. All costs of this appeal are cast to Travis Bond.

**APPEAL DISMISSED.**